Good morning, Your Honors, and may it please the Court. My name is Brian Murray, and I represent Alejandrina and Oligario Sanchez. This appeal raises a lot of the issues Your Honors just heard in the first appeal. And in light of the government's statement that they didn't have a conceptual problem with the notion that the cumulative hardship question is a legal question you can review, what I want to focus on is the second point that I wanted to make, which is that merits question of did the agency apply the correct standard in adjudicating the Sanchez's case? As Your Honors have already pointed out, to rule on cancellation of removal, the agency must examine cumulatively the hardship to each qualifying relative. With respect to this case, it's not enough, as the IJ did here, to pay lip service. That's Moscaro, which is a mem dispo, but I think the point is well taken. You can't just say up front, I'm going to perform a cumulative analysis, and then have the courts just assume that that's what happened. Now, who are the – in this case, we have more than one qualifying relative. We have the two parents who are LPRs. Yes, Your Honor. And we've got four children? Yes, Your Honor. Are there any other qualifying relatives? No. Okay. So we've got six, two parents and four children. We've got Mrs. Sanchez Luna Alejandria and his mother, who's Rosina. She's 78. Antonio is 75. And then the four children, Diego, Elizabeth, Andrew, and Adrian. Our point here is simply that if you read the government's brief, and I don't think you'll find anything in there, and I don't think government counsel is going to be able to point you to anything today in the IJ's decision that actually shows the IJ doing a cumulative analysis. To the contrary, here, the fault lies in how he looked at these things. Just as if you look at one person, if 10 is the threshold, we have to get over for hardship. If you look at each person and say, that's a 2, it doesn't work, that's a 2, it doesn't work, you can easily get rid of everybody. And that's what we would submit happened here. Whereas if you add the twos together, the four children, the two parents, you easily exceed the 10. And we contend that's what should have happened. If you read the 29 pages, and again, we have to take the agency at its word. It's the IJ's decision that's controlled. If you read the 29 pages, what you find is the immigration judge, starting with the parents, conceding that care for the mother is needed, and then determining that because there's somebody else who could potentially do that, no hardship to her. But that's the mean sister among Fresno, right? That's right. Or rather, the daughter relies to this with respect to the mother. Exactly. And then once the judge concludes that, he stops and says, okay, now, I will move on to consider the four children. There's no sort of cross-linking of the hardship of the four children being separated from their grandparents, who they've lived with for these many years. There's no talk of the hardship on, you know, from either of those perspectives, the children losing grandparents, the grandparents losing children. And that's assuming that the grandparents were to stay and the children go. It could be that all of them go, which is a whole different set of hardships. It's the cross-linking that didn't happen. But then he moves on to the children and sort of describes them, again, sort of as an agglomeration. Here are four children. Some speak Spanish well, some don't. Some write well, some don't. All in all, this is nothing different than what happened to any other family, so no hardship. It's the divide-and-conquer method of analysis that we would contend was not appropriate here, which required, under the statute and under the BIA's own precedent, is a cumulative analysis to each of these people and then together the level of the hardships. Now, just to be clear, we're not asking the court to re-weigh those hardships. All we're asking is a remand to the BIA, and I guess on from there to the IJ, to do that correctly in the first instance. And with that, I'd reserve the rest of my time. Thank you. Response? Corey Farrell on behalf of the government. Again, the issue presented in this case is whether this court has jurisdiction to review the denial of Petitioner Leyva's cancellation of removal application for failure to establish exceptional and extremely unusual. We have a little more to work with in this case. What evidence do you have that the IJ did consider this hardship cumulatively? Well, here, the immigration judge several times stated the standard, and although paying lip service to the standard is not sufficient, he stated the standard, looked at the factors and the evidence presented, and then analyzed those, and again, at the end, stated cumulatively, taken separately or cumulatively, that the hardship standard was not met. And that was looking at both the hardship to the parents and the children. And again, there are no magic words required. We have to look at the immigration judge's opinion. You know, it does kind of look like there's a little bit of divide and conquer, a little bit. How so? Well, as he goes down through each one, it's clear, each one, and then basically says, you know, I also looked at them cumulatively. But there really isn't an analysis that puts it all together. And, you know, in this one, there are more people involved. It's a little bit different than the one we just heard. Right. And, Your Honor, I would also submit that, in this case, there was the parents had to be divided from the children a little bit, because there was an alternative finding for Petitioner Sanchez. His application for cancellation was denied as a matter of discretion, and also for failing to show the hardship to the children. And the children were his only qualifying relatives. So that analysis only applied to Petitioner Sanchez. But he's in a different situation. That's correct. And then with Petitioner Leyva, the immigration judge looked at her parents and her children taken together. I'm going to make you go through your pieces here. Could you point me in the I.J.'s order to the portions where the I.J. says I'm considering this hardship cumulatively? Yes, Your Honor. I wouldn't want you to have a wasted trip from Washington, D.C. Thank you. On page 53 of the record, I believe, it is page 3 of the immigration judge's decision. In the top paragraph, he says this hardship can be established separately or in a cumulative nature. And then... Okay. And that just says it can be. It doesn't say you're doing it yet. And then on page 66 of the record, page 16 of the immigration judge's decision, he lays out the standard that the court must consider all of the factors presented cumulatively. Okay. That's again, he just elaborates on the standard. Where does he apply it? So far, we've got boilerplate. And then page 76, page 26 of the immigration judge's decision, in the second paragraph, the first full paragraph, he states that the court has considered the hardship separately and cumulatively, but finds simply that respondents don't meet the standard separately or cumulatively. I can't think of the name of the case right now, but there was a board decision not too long ago where they did a cumulative analysis. And it was much more thorough and extensive than this. That board decision is cited here someplace. I can't remember the name of it. Not Ingray and Sinas. Maybe it's Adon Zola? Respectfully, Your Honor, the statute and the regulations don't lay out exactly what the immigration judge has to do. If I'm going to be really sort of nitpicky about language, I'm looking at AR 76 or 26 of the IJ's order, the sentence you quite properly directed our attention to. The IJ says, and the court has considered this hardship separately and cumulatively, but finds that the respondents do not meet the standard of exceptional, extremely unusual hardship for their children and or parents separately or cumulatively. I could read that saying, well, he looked at the children cumulatively, and then he looked at the parents cumulatively. But he didn't look at all six of them cumulatively. Possibly, Your Honor, you could read it that way, but the government's position is that when you look at the entire decision, and don't just take out one sentence, that the immigration judge did consider them cumulatively. The case I was thinking of is in Racinus, where the board's cumulative analysis is a little more thorough than what happened in this case. And here I submit that when you look at the decision... Part of the analysis requires the assessment of hardship factors in their totality, often termed a cumulative analysis. Here, the heavy financial and family burden on the adult respondent, the lack of support from the children's father, United States citizens, children's unfamiliarity with the Spanish language, the lawful residency in this country of all the respondents' immediate family, and the concomitant lack of family in Mexico combine... And here, Your Honor, I'll... And here, Your Honor, all of those decisions were considered. They just were not laid out in one paragraph. But there weren't any factors that were not considered by the immigration judge. Are there no further questions? Thank you. Thank you, Your Honors. Just two quick points. The first, picking up on something the government's counsel had mentioned, this question of whether Oligario is actually in a different situation. The problem with the I.J.'s opinion on that score is it appears to be a denial in discretion, which would be different, but the discretionary denial seems to be linked back up to this question of a lack of the unusual and extreme hardship. It's hard to separate out him at this point in the proceedings and say, okay, this decision can stand as to him but not as to her. And with respect to these two parents, the record also shows that they were approved for citizen petition visas in 95, and as the USCIS turned their way through the visa numbers, they're about five months away from that as far as I can tell. Who's five months away? Mrs. Sanchez Luna Alejandrina, her brother, who's a U.S. citizen, filed on her behalf and also for Oligario. And they're both collectively about five months away. The petitions have been approved. They're awaiting a visa number. And according to the USCIS website, as far as I can tell, they're about five months away. So in five months, if things go according to what they hope will be the plan, they'll be entitled to citizenship and entitled to be here? They'll be entitled to be here, not citizenship. They'll be entitled to be here. Exactly. So to separate out the husband and the wife in this stage of the administrative proceedings would seem unnecessary. And then the only other thing I would add is, with respect to your Honor's point about the language on page 876, I agree with you that it's ambiguous, and that's the point. It's the agency's job to show that it did the work and not government counsel's job to fill in that standard today. As the Fifth Circuit said in Hornendez-Cadrero, just as one straw can eventually break the back of a camel, the cumulative effect of many hardships can certainly add up. We would submit that this case should be remanded for that kind of analysis. I want to do things a little bit out of order. Ordinarily, we're finished right now. But if I could ask the government to come back up to the podium for a moment. What about this, in five months they'll be approved likely on the visa list? I was not aware that they would be approved in five months until this morning. It seems rather silly to send them out at this point if all we're talking about is five months. For five months. I'm sorry, Your Honor, I don't have any information on their visa petition pending with the CIS. You know, sometimes we send these cases when we think there's some possibility of compromise to our mediation. Would you have any objection to taking this case to mediation just because it seems so silly to send these people out if they're going to be back in legally in five months, the disruption that would be involved with the children and with the parents and so on? So would you have any objection to that? No. Would you have any objection? So you've been to mediation. Were you a participant in that? My guess is that you've been added to this case fairly recently. I actually briefed this case, but it took place after. And at the time of that earlier mediation, did we have this prospect of a visa within five months or so? The visa was further out at that point. The petitions were approved back in 1995, but as you know, it was on visa number 10 some months later. It hasn't been since a year or so has expired since we did that mediation. Okay. Thank you very much. The case of Sanchez Luna is now submitted for decision, and I'll say the same thing I said before. Thank you very much for participating in the pro bono program. We very much appreciate not only the work, but the quality of the work. And did you fly in from Chicago? I did. I hope you're enjoying our October weather. They could use some of the rain here. And I don't want the government to feel left out. But I think working for the government is also a public service, so thank you. The next case on the calendar has been submitted on the briefs, NPR Global versus FDIC. The next argument case is A-1 All-American Roofing versus Perkins.
judges: Fletcher, Paez, Duffy